IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELIZABETH BROWN & KIM EVANS-JOHNSON,** *Plaintiffs,* | : : : : | **CIVIL ACTION** |
| v. | : : | |
| **WILLIAM PENN SCHOOL DISTRICT,** *Defendant.* | : : : | No. 18-03674 |

## MEMORANDUM

### I. INTRODUCTION

Plaintiffs, Elizabeth Brown ("Brown") and Kim Evans-Johnson ("Evans-Johnson"), (collectively, "Plaintiffs"), brought this civil action for race and gender discrimination against their current employer, Defendant William Penn School District ("WPSD" or "Defendant"). *See* ECF No. 6 at 1.

On March 17, 2020, following a four-day jury trial, and in accordance with the verdict of the jury, the Court issued a Judgment in Favor of the Defendant. *See* ECF Nos. 84, 85. Currently, before the Court is Plaintiffs' Motion for a New Trial pursuant to Fed. R. Civ. P. 59(a)(1)(A) and 60(b)(2) or (3) (ECF No. 89), Defendant's Response in Opposition to the Motion (ECF No. 97), and Plaintiffs' Reply (ECF No. 98). The matter is fully briefed for consideration.

### II. BACKGROUND

Plaintiffs' post-trial motion stems from a civil action in which Plaintiffs sued their employer, WPSD, for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pennsylvania Human Relations Act, and 42 U.S.C. § 1983 for race, gender, and both race and gender discrimination. *See* ECF No. 6. Trial was held from March 9-13, 2020. The jury returned a defense verdict on all counts and the Court entered judgment accordingly. *See* ECF No. 85.

On April 10, 2020, Plaintiffs filed the instant post-trial motion arguing that Defendant strategically failed to produce evidence, namely the personnel files of Suzanne Murphy, Seamus Smith, Mark Sliwka, Mary Kramer, John Davis, Warren Danenza, Robert Curry, and James Corkery, and that this evidence should serve as the basis for a new trial. *See* ECF No. 89 at 21-22. Defendant concedes that it produced this evidence in a separate matter in which Plaintiffs' counsel represented Dr. Sydney Denkins, a black female, who filed a complaint with the EEOC that accused WPSD of the same discriminatory hiring and promotional practices that Plaintiffs' alleged here. *See* ECF No. 97 at 18, 20.

On August 27, 2019, the EEOC found that "there was reasonable cause to believe WPSD violated Title VII when it failed to promote/hire Dr. Denkins to a vacant position." *See id.* at 20. On February 10, 2020, after the U.S. Department of Justice ("DOJ") declined to pursue Dr. Denkins' case, it issued her a notice of right to sue and the EEOC closed its investigation. *See* ECF No. 89 at 4. Plaintiffs'

counsel submitted a Freedom of Information Act ("FOIA") request on March 16, 2020. *See id*.

Nine days later, on March 25, 2020, the EEOC responded and produced 1,133 pages of documents. *See id*. According to Plaintiff, nearly 900 of those pages related to "the qualifications of white or male WPSD employees who had been promoted or appointed into leadership positions instead of Plaintiffs and Dr. Denkins." *Id*. at 11. Specifically, these documents contained the aforementioned personnel files of: Susan Murphy (149 pages), Seamus Smith (93 pages), Mark Sliwka (108 pages), Mary Kramer (239 pages), John Davis (101 pages), Warren Danenza (160 pages), Robert Curry (44 pages), and James Corkery (77 pages). *See id.* at 4-5. At trial, Plaintiffs identified these named individuals as "white or male WPSD employees who were less qualified than Plaintiffs." *Id.* at 5.

Plaintiffs' instant motion seeks a new trial under Fed. R Civ. P. 59(a)(1)(A) and 60(b)(2) or (3) on the grounds that "the nearly 900 pages of documents [Defendant] did not produce to Plaintiffs is newly discovered evidence demonstrat[ing] discovery misconduct by [Defendant] or its counsel or both, and is so unfair, unjust and prejudicial to Plaintiffs that a new trial is warranted." *Id.* at 3.

### III. DISCUSSION

#### A. Standard of Review

Rule 59(a) governs the Court's ability to grant a new trial. This rule allows

the Court to grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court . . ." Fed. R. Civ. P. 59(a)(1)(A). The standard the Court follows depends on the grounds upon which the motion rests. *See Klein v. Hollins*, 992 F.2d 1285, 1289-90 (3d Cir. 1993). Rules 59 and 60(b) "share the same standard for granting relief on the basis of newly discovered evidence." *Compass Tech., Inc. v. Tseng Labs., Inc.,* 71 F.3d 1125, 1130 (3rd Cir. 1995). The Court may grant a new trial only where "a miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or where the verdict "shocks [the] conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991).

Rule 60(b) governs the Court's ability to grant relief from a judgment or order. The Court may grant relief under Rule 60(b) only where there are "injustices which … are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of res judicata." *United States v. Beggerly*, 524 U.S. 38, 46 (1998) (internal quotations omitted).

Rule 60(b)(2) permits the Court to grant relief on the basis of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). A movant under Rule 60(b)(2) "'bears a heavy burden,' which requires 'more than a showing of the potential significance of the new evidence.'" *Bohus v.*

4

*Beloff*, 950 F.2d 919, 930 (3d Circ. 1991) (quoting *Plisco v. Union R. Co.*, 379 F.2d 15, 17 (3d Cir. 1967), *cert. denied*, 389 U.S. 1014 (1967)).

Rule 60(b)(3) permits the Court to grant relief on the basis of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). A movant under Rule 60(b)(3) also bears a heavy burden in establishing by "clear and convincing" evidence "that the adverse party engaged in fraud or other misconduct, and that this misconduct prevented the moving party from fully and fairly presenting his case." *Stridiron v. Stridiron*, 698 F.2d 204, 206-07 (3rd Cir. 1983); *Brown v. Pennsylvania R.R. Co.*, 282 F.2d 522, 527 (3rd Cir. 1960).

Here, "Plaintiffs seek a new trial based on [Fed. R. Civ. P.] 59(a)(1)(A) and 60(b)(2) or (3)." ECF No. 89 at 5.

B. <u>Application</u>

1. *Rule 59(a)(1)(A) and Rule 60(b)(2)*

In *Compass Tech., Inc. v. Tseng Labs., Inc.*, the Third Circuit recognized that Rule 60(b)(2) permits the Court to consider "new evidence" as a reason for a new trial under Rule 59(a). 71 F.3d at 1125; *see also Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005).

For purposes of Rule 60(b)(2), the term "newly discovered evidence" refers to "evidence of facts in existence at the time of trial of which the aggrieved party

was excusably ignorant." *Bohus*, 950 F.2d at 930. The Court may grant a Rule 60(b)(2) motion only where the newly discovered evidence: "(1) [is] material and not merely cumulative [or impeaching], (2) could not have been discovered before trial through the exercise of reasonable diligence, and (3) would probably have changed the outcome of the trial." *Id.* (citing *Stridiron,* 698 F.2d at 207).

                i.    <u>Material and not merely cumulative or impeaching</u>

To evaluate whether the newly discovered evidence is merely cumulative or impeaching, it is useful to understand the context within which evidence was previously presented.

The Third Circuit applies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to discrimination claims. A plaintiff bringing an employment discrimination claim bears the initial burden of establishing a prima facie case by showing: "(1) that she was a member of a protected class, (2) that she was qualified for the [] job to which she applied, and (3) another person, not in the protected class, was treated more favorably." *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006).

Once the plaintiff has established a prima facie case, the burden then shifts to the employer to offer evidence of a "legitimate nondiscriminatory reason" for the "adverse employment decision." *Id*. at 539, 542. If the employer meets this

6

burden, then the plaintiff must show that "the proffered reason is merely a pretext for actual discrimination." *Id.*

Plaintiffs frame the newly discovered evidence as "the nearly 900 pages of documents" regarding "the qualifications of white or male WPSD employees who had been promoted or appointed into leadership positions instead of Plaintiffs." ECF No. 89 at 5, 20. Plaintiffs maintain that this evidence is material because it "goes directly to [the] issues of whether [Defendant] repeatedly passed [Plaintiffs] over for promotions and leadership opportunities and instead hired lesser qualified white or male candidates." *Id.* at 19.

In response, Defendant contends that the evidence is merely "impeaching or cumulative." ECF No. 97 at 31. Specifically, Defendant argues:

> [A]t trial, Plaintiffs were able to present numerous witnesses and cross-examined defense witnesses relating to the alleged lack of qualifications of persons who had been appointed or promoted to administrative and leadership positions in the WPSD. Taking it witness-by-witness and piece-by-piece, the evidence now offered is merely cumulative or impeaching.

*Id*. Further, Defendant points out that "[l]itigation cannot be unending [and] [t]he concept of finality must be upheld." *Id.* at 30.

The Court agrees with Defendant's evaluation of the cumulative and impeaching nature of the evidence at issue. Plaintiffs' contention that the newly discovered evidence goes directly to the same issues previously litigated reveals one of the fatal flaws in its post-trial motion. At trial, the jury heard evidence on all

7

three elements required under the *McDonnell Douglas* framework. This newly discovered evidence would merely reiterate the same testimony. As such, the evidence is cumulative. Plaintiffs had ample opportunity and were given wide latitude over the course of four days to present their case, which is emphasized by the fact that Plaintiffs did not raise any trial error objections.

Testimony from WPSD Superintendent, Jane Harbert ("Superintendent Harbert"), and WPSD Human Resources Director, Joseph Conley demonstrated that Plaintiffs' work behavior was sanctionable, that their qualifications were lacking in leadership and experience, especially in comparison to those chosen for positions ahead of them, and that they interviewed poorly.

Particularly, Superintendent Harbert testified that Plaintiff Brown:

> [H]ad been written up several times for attendance issues, that she had reported late to work on dozens of occasions, and that she had criticized administrative and school board decision making, as well as colleagues. She stated that Brown had not been a team player, having failed to attend professional development, as requested, didn't get along with people, failed to have the best interview responses when she applied for administrative positions, lacked vision for the school district, and had been a guidance counselor, which required a substantial leap in skills and experience to any leadership role.

ECF No. 97 at 10.

With regard to Plaintiff Evans-Johnson, Superintendent Harbert testified:

> Ms. Evans-Johnson had not applied for TOSA positions, had received a letter of warning for her attendance issues, was not a team player who worked with colleagues in the classroom or in her department, and had not provided the 'strongest answers' in interviews for administrative positions.

> Ms. Harbert noted that Ms. Evan-Johnson's skills in heading an autism support classroom were not as transferable to a principal position, that she had not articulated a vision to lead buildings, had not gotten along with Dr. Judy Lee (the principal of the high school), and had not gotten along with others in her department.

*Id.* at 10-11.

After all of the evidence was presented, the jury decided the ultimate issue that Defendant did not discriminate against Plaintiffs because of their race, sex, nor a combination thereof. In other words, the jury decided that Defendant had legitimate non-discriminatory reasons for its failure to hire or promote Plaintiffs. Plaintiffs simply failed to persuade the jury otherwise. In consideration of the principle of res judicata, the Court cannot permit Plaintiffs to re-litigate this issue.

The newly discovered evidence is redundant and simply attempts to bolster the same points that Plaintiffs previously failed to establish at trial. Thus, the newly discovered evidence fails to meet the first criterion of being material as opposed to cumulative and impeaching.

> ii. <u>Undiscoverable before trial through the exercise of reasonable diligence</u>

Plaintiffs contend that they "could not have discovered th[e] evidence before trial through the exercise of reasonable diligence" because "[it] was inaccessible to them until the EEOC closed its investigation of Dr. Denkins' EEOC complaint" and because Defendant "purposely concealed and strategically refused to produce certain documents that Plaintiffs obtained from the EEOC after trial." ECF No. 87

9

at 19-20. Additionally, Plaintiffs claim they were busy "preparing for trial" and "reasonably prioritized their time." ECF No. 98 at 1.

In response, Defendant asserts that, "[t]he 'newly discovered' evidence could have been obtained prior to trial if not for Plaintiffs' failure to properly and specifically request such evidence and their lack of diligence in pursuing any and all discoverable evidence that could have supported their case." ECF No. 97 at 27. Dr. Denkins and Plaintiffs were represented by the same counsel. *See id.* at 20. Presumably, therefore, Plaintiffs' counsel "knew that Denkins had made a complaint similar to Plaintiffs' allegations against the WPSD." *Id.* at 29.

In light of this information, Defendant contends that Plaintiffs had ample time to "make a FOIA request to the EEOC upon the completion of the EEOC investigation into Dr. Denkin's complaint" on August 27, 2019 – "more than six months before trial." *Id*. Furthermore, Defendant argues that Plaintiffs could have submitted their FOIA request after they received a notice of right to sue from the DOJ on February 10, 2020 – a month before trial. *Id.*

The Court agrees with Defendant's evaluation of the circumstances. As much as Plaintiffs attempt to place Defendant at fault for their failure to obtain the newly discovered evidence sooner, there does not appear to be any genuine reason as to why Plaintiffs could not have done so prior to trial. As previous counsel to Dr. Denkins, Plaintiffs' counsel reasonably knew these documents existed.

Plaintiffs should have prioritized their obtainment during its trial preparation. It took the EEOC only nine days to grant Plaintiffs' FOIA request once it was made.

Ultimately, it is clear that Plaintiffs did not exhibit reasonable diligence in obtaining the "nearly 900 pages of documents" regarding "the qualifications of white or male WPSD employees who had been promoted or appointed into leadership positions instead of Plaintiffs." ECF No. 89 at 5, 20. Thus, the newly discovered evidence fails to meet the second criterion of being undiscoverable before trial through reasonable diligence.

### iii. Capable of changing the outcome of the trial

Next, Plaintiffs assert that if they had the newly evidence before trial, "then [they] could have engaged in additional and focused discovery last year and would have been better prepared at trial to combat [Defendant]'s defenses of subjectivity, speculation and conjecture," thus altering the outcome of the trial. *Id.* at 20. Defendant maintains that the newly discovered evidence "would not probably have changed the outcome of the trial – a trial in which Plaintiffs' own testimony at trial, as well as their shortcomings and deficiencies as employees of the WPSD sunk their case." ECF No. 97 at 27.

Specifically, Defendant contends that none of the newly discovered evidence would have repaired "the glaring deficiencies in Plaintiffs' case" because the evidence fails to establish that:

11

> Plaintiffs didn't have attendance and lateness issues, that they were team players who went above and beyond their normal school duties, that they were professional and acted respectfully toward those in authority over them, that they interviewed well and provided a compelling vision for the district and its students, or that they were rated the best candidates for available positions by stakeholders and those responsible for making employment decisions.

*Id.* at 20.

The Court agrees with Defendant that the newly discovered evidence would not have changed the verdict. Plaintiffs fall far short of the heavy burden under Rule 60(b)(2) which requires more than a showing of the potential significance of the newly discovered evidence. Thus, the newly discovered evidence fails to meet the third criterion of being capable of changing the outcome of the trial.

The Court may grant a Rule 60(b)(2) motion only where the newly discovered evidence: "(1) [is] material and not merely cumulative [or impeaching], (2) could not have been discovered before trial through the exercise of reasonable diligence, and (3) would probably have changed the outcome of the trial." *Bohus* 950 F.2d at 930. The newly discovered evidence in the instant case fails to meet all three criteria. Thus, relief is not warranted under Fed. R. Civ. P. 60(b)(2).

### 2. *Rule 60(b)(3)*

"Failure to disclose or produce evidence requested in discovery can constitute Rule 60(b)(3) misconduct," although the Third Circuit has "not state[d] . . . that every failure to produce discovery qualifies as Rule 60(b)(3)

misconduct." *Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs, Inc.*, 434 F. App'x 109, 112 (3rd Cir. 2011); *see e.g.*, *Stridiron*, 698 F.2d at 207. "[R]elief under Rule 60(b)(3) may be warranted, even though the newly disclosed evidence may not change the result, if such evidence 'would have made a difference' in advancing the moving party's claim." *Floorgraphics, Inc.*, 434 F. App'x at 111 (quoting S*eaboldt v. Pa. R.R. Co.*, 290 F. 2d 296, 299 (3rd Cir. 1961)).

Plaintiffs contend that:

> [Defendant] cannot possibly legitimately explain why it did not produce to Plaintiffs documents showing, among other material facts, that 1) Ms. Murphy had received needs improvement ratings and had complained that Dr. Lee was creating a hostile work environment at WPSD, 2) Mr. Smith had repeatedly received needs improvement ratings and was cited for excessive lateness and absence, 3) Mr. Davis had received needs improvement ratings, and 4) Mr. Danenza had been accused of assaulting a student.

ECF No. 89 at 21. In other words, Plaintiffs contend that "[Defendant] DID uncover discoverable documents Plaintiffs requested in discovery but DID NOT produce those documents to Plaintiffs" and that "[t]he Court should sanction [Defendant] by ordering a new trial." *Id.* at 21-22 (emphasis in original).

In response, Defendant argues that "[t]he discovery requests that Plaintiffs did make were vague and ambiguous …" ECF No. 97 at 28. According to Defendant, "[Plaintiffs] generally requested information speaking in terms of 'eligibility and desirability' of candidates for leadership positions and appointments, interview and scoring sheets, and applications, or sought documents

showing that Plaintiffs were not the best candidates." *Id*. Crucially, Defendant avows that "[n]o 'personnel files' of Kramer, Davis, Sliwka, et al., were requested. The only personnel files ever referenced in discovery were those of the Plaintiffs, which were noticed in [Defendant]'s initial disclosures." *Id*. at 28-29.

Defendant also notes that "by October 21, 2019, Plaintiffs knew that [Defendant] had not produced complete personnel files, *See, PMNT,* at p. 8, but made no further request for them." *Id*. at 29. In sum, Defendant reasons that "[n]o misrepresentation on the part of [Defendant] caused Plaintiffs to fail to pursue what they now contend was necessary." *Id*.

Again, the Court agrees with Defendant's understanding of the circumstances. Plaintiffs' lack of reasonable diligence in pursuing the personnel files is the reason why they did not have them at trial. Thus, Plaintiffs fail to meet the heavy burden of establishing by clear and convincing evidence that any alleged fraud or misconduct on the part of Defendant prevented Plaintiffs from fully and fairly presenting their case. Even if the Court found that Defendant engaged in discovery misconduct that rises to the level of Rule 60(b)(3) misconduct, the Court is not convinced that the newly discovered evidence would have made any difference whatsoever in Plaintiffs' case. As such, relief is not warranted under Fed. R. Civ. P. 60(b)(3).

Finally, in some last-ditch effort, Plaintiffs rely on *U.S. Postal Services v. Aikens*, 460 U.S. 711 (1983) to claim that the *McDonnell Douglas* framework does not apply at trial. *See* ECF No. 98 at 3. Plaintiffs argue that "[t]he relevant inquiry for the district court or jury is not whether plaintiffs presented a prima facie case but is instead to determine the ultimate question of discrimination based on the evidence." *Id*. This argument is neither relevant to the present motion nor is the holding, as characterized by Plaintiffs, applicable. Here, the jury decided the ultimate question and returned a defense verdict on all counts. *See* ECF No. 84.

## IV.     CONCLUSION

For the foregoing reasons, the Court denies Plaintiffs' Motion for a New Trial pursuant to Fed. R. Civ. P. 59(a)(1)(A) and 60(b)(2) and (3) in the accompanying Order.

**BY THE COURT:**

/s/ Chad F. Kenney

**Date:** August 3, 2020

**CHAD F. KENNEY, JUDGE**